IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT | § | |
| OPPORTUNITY COMMISSION, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-12-0221 |
| | § | |
| SIMBAKI, LTD. d/b/a Berryhill Baja | § | |
| Grill & Cantina, | § | |
|     Defendant. | § | |

---

| | |
|---|---|
| LAURA BAATZ and | § |
| KIMBERLY KULIG, | § |
|     Intervenor Plaintiffs, | § |
| | § |
| v. | § |
| | § |
| PHILIP J. WATTEL, *et al.*, | § |
|     Intervenor Defendants. | § |

## MEMORANDUM AND ORDER

This sexual harassment case is before the Court on the Motion for Summary Judgment filed by Defendant Philip J. Wattel ("Wattel's Motion") [Doc. # 95], to which Intervenor Plaintiffs Laura Baatz and Kimberly Kulig filed a Response [Doc. # 101], Wattel filed a Reply [Doc. # 103], and Intervenors filed a Sur-Reply [Doc. # 115].

Also pending is the Motion for Summary Judgment filed by Defendant Berryhill Hot Tamales Corporation ("BHT") ("BHT's Motion") [Doc. # 96], to which

Intervenors filed a Response [Doc. # 105], BHT filed a Reply [Doc. # 114], and Intervenors filed a Sur-Reply [Doc. # 117].

Also pending is the Motion for Partial Summary Judgment filed by the Equal Employment Opportunity Commission ("EEOC") ("EEOC's Motion") [Doc. # 97], to which Defendant Simbaki, Ltd. d/b/a Berryhill Baja Grill & Cantina ("Simbaki") filed a Response [Doc. # 111], and the EEOC filed a Reply [Doc. # 116].  Simbaki filed its own Motion for Summary Judgment ("Simbaki's Motion"), to which the EEOC filed a Response [Doc. # 106], and Intervenors filed a Response [Doc. # 107]. Simbaki neither filed a reply nor requested additional time to file one.

Having reviewed the full record and applicable legal authorities, the Court **grants in part and denies in part** Wattel's Motion, **grants** BHT's Motion, **grants in part and denies in part** the EEOC's Motion, and **grants in part and denies in part** Simbaki's Motion.

## I.     BACKGROUND

BHT owns and operates a chain of restaurants and bars in the Houston, Texas, area.  Wattel acquired the franchise rights to operate three Berryhill restaurants through a parent company, Defendant Simbaki, Ltd. d/b/a Berryhill Baja Grill & Cantina.  Intervenor Plaintiffs were employed as bartenders at Simbaki's Montrose location.

Each Intervenor left her job at Simbaki for a while and later returned.  Kulig began her employment in August 2003, was terminated in October 2005, and returned in July 2006.  Kulig resigned in December 2007 and moved to another state.  Baatz was first employed in August 2003, left in 2005, and returned shortly thereafter. Baatz either resigned or was terminated in February 2008.

Kulig filed a Charge of Discrimination with the EEOC in November 2007, and Baatz filed a Charge of Discrimination with the EEOC in March 2008.  Each named "Berryhill Baja Grill" as the Employer and listed its address on Montrose Boulevard. Each asserted that she had been sexually harassed by Wattel.  Kulig asserted also that Wattel retaliated against her for complaining about the alleged sexual harassment. Additional factual background will be provided below where relevant.

On January 24, 2012, after conciliation efforts proved unsuccessful, the EEOC filed this lawsuit against Simbaki, asserting claims under Title VII for sexual harassment and retaliation.  On March 1, 2012, Intervenor Plaintiffs filed their Intervenor Complaint [Doc. # 6] against Wattel, Simbaki, Simbaki-I, Inc., and BHT. In addition to the Title VII claims for sexual harassment and retaliation, Intervenor Plaintiffs asserted state law claims for battery and negligent retention, and Baatz asserted a state law claim for libel and slander.

By Memorandum and Order [Doc. # 41] entered May 23, 2012, the Court dismissed Intervenors' battery, negligent retention, and defamation claims against BHT with leave to amend the defamation claims against BHT by June 4, 2012.  No amended pleading was filed.  The Court also granted Wattel's Motion to Dismiss the defamation claims that were based on statements made during the course of the EEOC proceeding.

After a full opportunity to complete discovery, the pending summary judgment motions were filed.  The motions have been fully briefed and are now ripe for decision.

## II.    SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).  Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the

movant is entitled to judgment as a matter of law."  FED. R. CIV. P.  56(a); *Celotex*, 477 U.S. at 322-23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact."  *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The moving party, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).  The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'"  *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial.  *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted).  "An issue is material if its resolution could affect the outcome of the action.  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the court reviews the facts and inferences to be drawn from them in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant. *Tamez v. Manthey*, 589 F.3d 764, 769 (5th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Chambers v. Sears Roebuck and Co.*, 428 F. App'x 400, 407 (5th Cir. June 15, 2011) (citing *Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002)). Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted). In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

The Court may make no credibility determinations or weigh any evidence, and must disregard all evidence favorable to the moving party that the jury is not required to believe. *See Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010) (citing *Reaves Brokerage Co.*, 336 F.3d at 412-413). The Court is not required to accept the nonmovant's conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence. *Id.* (citing *Reaves Brokerage*, 336 F.3d at 413). Affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence. *See* FED. R. CIV. P. 56(c)(4); *Love v. Nat'l Med. Enters.*, 230 F.3d 765, 776 (5th Cir. 2000); *Hunter-Reed v. City of Houston*, 244 F. Supp. 2d 733, 745 (S.D. Tex. 2003). A party's self-serving and unsupported statement in an affidavit will not defeat summary judgment where the evidence in the record is to the contrary. *See In re Hinsley*, 201 F.3d 638, 643 (5th Cir. 2000) ("A party's self-serving and unsupported claim that she lacked the requisite intent is not sufficient to defeat summary judgment where the evidence otherwise supports a finding of fraud." (citation omitted)).

Finally, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). "Rule 56 does not impose upon the district court

a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *See id.* (internal citations and quotations omitted).

## III.    WATTEL'S MOTION FOR SUMMARY JUDGMENT

Wattel seeks summary judgment on Intervenor Plaintiff Baatz's Texas state law causes of action for libel and slander, which are based on two allegedly false statements made by Wattel to a reporter for the *Houston Chronicle* newspaper.[1] Specifically, Baatz alleges that after the EEOC filed this lawsuit, Wattel "falsely told the Houston Chronicle that Laura Baatz was 'fired because she left the restaurant unattended while there was a customer inside.'" Baatz alleges that Wattel also stated falsely that she "was offered a non-supervisory position but opted not to take it, he said.'" *See* Intervenors' Complaint [Doc. # 6], ¶ 46.[2]

### A.    Whether Statements Were Privileged

Wattel argues that he is entitled to summary judgment on the defamation claims because the challenged statements, made during the course of litigation, are privileged. "Communications in the due course of a judicial proceeding will not serve as the basis of a civil action for libel or slander, regardless of the negligence or malice

---

[1]    The two sentences were reported in a single article in the *Houston Chronicle*.

[2]    In the Response to Wattel's Motion [Doc. # 101], Intervenor Baatz discusses other statements by Wattel that she considers defamatory.  These statements were not alleged in Intervenors' Complaint, and the deadline for amendments has expired.

with which they are made." *James v. Brown,* 637 S.W.2d 914, 916 (Tex. 1982).

"This privilege extends to any statement made by the judge, jurors, counsel, parties

or witnesses, and attaches to all aspects of the proceedings, including statements made

in open court, pre-trial hearings, depositions, affidavits and any of the pleadings or

other papers in the case." *Id.* at 916-17. Out-of-court statements fall within the

privilege if they bear some relationship to pending or contemplated litigation. *See,

e.g., Russell v. Clark*, 620 S.W.2d 865, 868 (Tex. App. – Dallas 1981, writ ref'd

n.r.e.). At issue in this case is whether the privilege extends to out-of-court statements

by a non-attorney.

A Texas Court of Appeals in *HMC Hotel Props. II Ltd. P'ship v. Keystone-

Texas Prop. Holding Corp.*, 2011 WL 5869608 (Tex. App. – San Antonio Nov. 23,

2011, pet. for review filed), held specifically that the privilege does not extend "to

out-of-court communications by non-attorneys." *Id.* at *15. The Texas court noted

that the extension of the privilege to out-of-court statements was based on the

adoption of section 586 of the Restatement (Second) of Torts, which applies only to

communications by attorneys. *See id.* The Texas court noted also that the adoption

of section 586 was based on a "public policy rationale in favor of attorneys as officers

of the court." *Id.* Based on these two considerations, the Texas court held that the

privilege for out-of-court statements applied only to attorneys. *See id.*

This Court concludes that the Texas Supreme Court would likely agree with the analysis and holding of HMC.  No Texas Court of Appeals has reached a different decision.  The single Texas federal district court that has applied the privilege to out-of-court statements by non-attorneys did so in a case in which the issue appears not to have been raised, briefed, or squarely decided.[3]  As a result, this Court holds that the privilege for communications in connection with a judicial proceeding does not apply to out-of-court statements by a non-lawyer.  Wattel's request for summary judgment that his statements to the *Houston Chronicle* were privileged is denied.

## B.    Whether the First Statement was True

Wattel argues that the first statement, that Baatz was "fired because she left the restaurant unattended while there was a customer inside," is true.  Baatz has presented evidence, however, that raises a genuine issue of material fact.  Baatz has stated under oath that she was not fired but, instead, she resigned the following day.  This fact dispute precludes summary judgment regarding whether the first statement was true.

---

[3]        In *Allstate Ins. Co. v. Plambeck*, 2012 WL 2130982 (N.D. Tex. Jan. 4, 2012), a United States Magistrate Judge in the Northern District of Texas applied the privilege to out of court statements by non-attorneys.  Specifically, the court applied the privilege to out-of-court statements made in a news release by Allstate's vice president in charge of the Special Investigation Unit, and to two news articles reporting comments by Allstate spokesmen.  *See id.* at *4-*5.  It does not appear, however, that the issue regarding the application of the privilege to out-of-court statements by non-attorneys was raised by the parties or addressed by the court.  The Magistrate Judge's Report and Recommendation was adopted by the District Court in *Allstate Ins. Co. v. Plambeck*, 2012 WL 2130912 (N.D. Tex. June 12, 2012).

### C.    Whether Statement Was Defamatory

Wattel argues that the second statement, that Baatz "was offered a non-supervisory position but opted not to take it," is not defamatory.  To maintain a defamation cause of action, a non-public figure plaintiff must prove that the defendant (1) published a statement; (2) that was defamatory concerning the plaintiff; (3) while acting with negligence regarding the truth of the statement.  *WFAA–TV, Inc. v.. McLemore,* 978 S.W.2d 568, 571 (Tex. 1998).  A statement is defamatory if it "tends to injure a living person's reputation and thereby expose the person to public hatred, contempt, or ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation . . .."  *See* Tex. Civ. Prac. & Rem. Code § 73.001.  "To be defamatory, a statement should be derogatory, degrading, and somewhat shocking, and contain elements of personal disgrace."  *Means v. ABCABCO, Inc.,* 315 S.W.3d 209, 214 (Tex. App. – Austin 2010, no pet.).  When considering whether a statement is defamatory, the challenged statement is considered as a whole, in light of the surrounding circumstances, based on how a person of ordinary intelligence would perceive the entire statement.  *See Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 114 (Tex. 2000); *Musser v. Smith Protective Serv., Inc.*, 723 S.W.2d 653, 655 (Tex. 1987).  A "person of ordinary intelligence" is one who "exercises care and prudence, but not omniscience, when evaluating allegedly defamatory communications."  *New*

*Times, Inc. v. Isaacks,* 146 S.W.3d 144, 157 (Tex. 2004).  "The appropriate inquiry is objective, not subjective."  *Id.*  "Whether words are capable of the defamatory meaning the plaintiff attributes to them is a question of law for the court."  *Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex. 1989); *Vice v. Kasprzak*, 318 S.W.3d 1, 17 (Tex. App. – Houston [1st Dist.] 2009, review denied).

This Court concludes, as a matter of law, the statement that Baatz "was offered a non-supervisory position but opted not to take it" is not defamatory.  The statement is not derogatory, degrading or shocking.  The statement that Baatz "opted" not to accept an offer of a non-supervisory position does not tend to injure her reputation or expose her to public hatred, contempt, or ridicule.  The statement in no way impugns or impeaches Baatz's honesty, integrity, virtue, or reputation.  Although Baatz asserts summarily in her Response that the statement "caused injury to her profession or occupation," she offers no facts or explanation to support that assertion.  The Court concludes that the statement that Baatz "was offered a non-supervisory position but opted not to take it" is not defamatory.

There is a genuine issue of material fact regarding the truth of the statement that Baatz was "fired because she left the restaurant unattended while there was a customer inside."  Summary judgment on this statement is denied.  The second statement, that

Baatz "was offered a non-supervisory position but opted not to take it" is not defamatory as a matter of law, and Wattel's Motion on this statement is granted.

## IV.  BHT'S MOTION FOR SUMMARY JUDGMENT

BHT is the franchisor of the Simbaki franchise for Berryhill Baja Grill & Cantina, including the Montrose location where Intervenors worked.  BHT argues that it is entitled to summary judgment on Intervenors' Title VII claims against it because Intervenors failed to exhaust her administrative remedies before the EEOC as to BHT. As a prerequisite to pursuing a Title VII claim, a plaintiff must first exhaust administrative remedies by filing a timely charge with the EEOC.  *See Taylor v. Books a Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002).  In this case, neither Intervenor Plaintiff named BHT in the Charge of Discrimination filed with the EEOC.

There exists generally an exception to the exhaustion requirement where there is an identity of interest between the party named in the EEOC charge and the unnamed defendant, who was provided with adequate notice of the charge and was given the opportunity to participate in the conciliation proceedings.  *See Parks v. Miss. Dep't of Transp.*, 380 F. Supp. 2d 776, 780 (N.D. Miss. 2005) (citing *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 905 (7th Cir. 1981)); *Walsh v. Aries Freight Sys., L.P.*, 2007 WL 3001650, *3 (S.D. Tex. Oct. 12, 2007) (Rosenthal, J.) (citing *Romain v. Kurek*, 836 F.2d 241, 245 (6th Cir. 1987));

*Bernard v. ATC VanCom*, 2005 WL 139110, *4 (N.D. Tex. Jan. 20, 2005).  Courts in the Fifth Circuit, however, "have continuously determined that the exception is not available to a party represented by counsel before the EEOC."  *See Shelton v. Bd. of Supervisors of Southern Univ.*, 2011 WL 4344566, *3 (M.D. La. Sept. 12, 2011); *Fassbender v. Treasure Chest Casino*, 2008 WL 170071, *6 (E.D. La. Jan. 16, 2008); *see also McLaughlin v. Kvaerner ASA*, 2007 WL 764290, *2 (E.D. Pa. Mar. 8, 2007), and cases cited therein.  In this case, it is undisputed that Intervenor Plaintiffs were represented by counsel before the EEOC.  Consequently, they are not entitled to benefit from the identity of interest exception.  BHT is entitled to summary judgment on Intervenor Plaintiffs' Title VII claims, the only claims remaining against BHT, for failure to exhaust administrative remedies.

## V.   <u>EEOC'S MOTION FOR SUMMARY JUDGMENT</u>

The EEOC asserts Title VII sexual harassment and retaliation claims against Defendant Simbaki.  The EEOC seeks summary judgment on three issues:  (1) that Simbaki has failed to establish its affirmative defense; (2) that Simbaki created a hostile work environment that was severe or pervasive; and (3) that Simbaki retaliated against Intervenor Baatz.

A.    **Hostile Work Environment**

Where, as here, the alleged harassment is by a supervisor, a hostile work environment claim requires proof of four elements: "(1) that the employee belongs to a protected class; (2) that the employee was subject to unwelcome sexual harassment; (3) that the harassment was based on sex; and (4) that the harassment affected a 'term, condition, or privilege' of employment." *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 330 (5th Cir. 2009) (quoting *Lauderdale v. Texas Dep't of Criminal Justice,* 512 F.3d 157, 163 (5th Cir. 2007)).   To affect a term, condition, or privilege of employment, "sexual harassment must be sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment."  *Id.* (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002)).

The EEOC seeks summary judgment that the sexual harassment at Simbaki was severe or pervasive.  To determine whether sexual harassment is severe or pervasive, the Court must consider the totality of the circumstances.  *See id.* (citing *Lauderdale*, 512 F.3d at 163).  "Relevant factors include 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"  *Id.* (quoting *Harvill v. Westward Commc'ns, LLC,* 433 F.3d 428, 434 (5th Cir. 2005) (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23 (1993)).

Additionally, "the conduct must be both 'objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so.'" *Id.* (quoting *Shepherd v. Comptroller of Pub. Accounts,* 168 F.3d 871, 874 (5th Cir. 1999)).

In this case, the uncontroverted evidence, primarily the deposition testimony of Wattel, establishes that Simbaki's Montrose location was rife with sexual harassment.[4] Wattel described the persistent environment at the Montrose location as "grab-assy." *See* Wattel Deposition, Exh. A to EEOC's Motion, pp. 72, 74. Wattel admitted biting Kulig on the hip without her permission, but claimed it was not hard enough to leave a mark. *See id.* at 85. Wattel admitted that, throughout Baatz's employment with Simbaki, he would ask her to go out to dinner with him, to go out of town with him, and to visit him on his boat. *See id.* at 151, 189. Wattel wrote Baatz a note in connection with the invitation to his boat, advising that pants were "ok but not necessary." *See* Handwritten Note, Exh. I-19 to EEOC's Motion. Wattel

---

[4]     Intervenors allege sexual harassment that goes far beyond that to which Wattel admitted. Non-party Corrie Domingo's affidavit supports Intervenors' allegations. For example, Domingo states that Wattel would trap Baatz behind the bar and kiss her. *See* Domingo Aff., Exh. H to EEOC's Motion, ¶ 6. Domingo heard Wattel "pressure Laura Baatz to stay at Berryhill after her shift to drink with him." *Id.* For purposes of the EEOC's Motion, however, the Court relies on the **undisputed** conduct described and admitted to by Wattel.

admitted frequently asking Baatz and customers if they would like to "make out" with him.  *See* Wattel Depo., p. 153.

Although the standard is severe *or* pervasive, the conduct admitted to by Wattel is both severe *and* pervasive.  The EEOC is entitled to summary judgment that Wattel's conduct was severe or pervasive.

### B.    <u>Affirmative Defense</u>

When there has been no tangible adverse employment action taken against an employee, an employer may assert an affirmative defense to liability for hostile work environment sexual harassment.[5]  To establish the affirmative defense, the employer must show: (a) that it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise." *Alaniz v. Zamora-Quezada*, 591 F.3d 761, 765 n. 35 (5th Cir. 2009) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *Faragher v. City of Boca Raton,* 524 U.S. 775, 807 (1998)).  Simbaki has failed to present evidence that raises a genuine issue of material fact as to either element.

---

[5]    The EEOC concedes that there exists a fact dispute regarding whether Intervenors suffered a tangible adverse employment action.  As a result, the EEOC argues that, even if no such employment action occurred, Simbaki is not entitled to the affirmative defense because it cannot establish the required elements of the defense.

There is no evidence that Simbaki exercised reasonable care to prevent or correct sexually harassing behavior.   The harassing conduct was committed principally by Wattel, Intervenors' manager.   There is no evidence of actual workplace protections.  Indeed, Wattel admitted that he had not obtained or reviewed BHT's operations manual, which included the corporate policy against sexual harassment.  *See* Wattel Depo., p. 156.  None of the managers received any training regarding the prevention or investigation of sexual harassment or workplace discrimination.  *See id.* at 278.  Simbaki has a sexual harassment policy, but it has never been reviewed by anyone on behalf of Simbaki, and it has never been posted in the workplace.  *See id.* at 276-77.  Simbaki's sexual harassment policy provides that any employee who was subjected to sexual harassment or abuse should advise her "Supervisor, Manager, General Manager, or Director of Operations."  *See* Sexual Harassment Policy, Exh. I-6 to EEOC's Motion.  Wattel, the alleged harasser, was the General Manager and Director of Operations.  Intervenors' supervisors and managers were not authorized to take any action other than to notify Wattel of any complaints. Moreover, one of the supervisors, Melissa Hagen, was not only Wattel's employee but also his live-in girlfriend.  The only avenues available to Intervenors were either to report the sexual harassment directly to the harasser, or to report it to individuals who had no authority other than to report the complaint to the harasser.  Simbaki has failed

to present evidence that it took any care, much less reasonable care, to prevent and correct sexually harassing behavior.

Simbaki has failed to present evidence that Intervenors unreasonably failed to take advantage of the limited corrective opportunities provided.  Both Intervenors made verbal complaints to Corrie Domingo, one of the supervisors/managers.  Baatz complained to Domingo specifically about Wattel exposing himself to her, grabbing her, touching her, and forcibly kissing her.  *See* Affidavit of Corrie Domingo, Exh. H to EEOC's Motion, ¶ 7.  Kulig made verbal and written complaints to Wattel in January 2007, complaining that he "slapped her behind and grabbed her left breast while she was working behind the bar." *See id.*, ¶ 8.  Both Intervenors told Wattel at a meeting on January 24, 2007, that the abuse and harassment "had to stop." *See id.* Wattel thereafter posted a sign at the bar that read "NOTICE:  Sexual harassment in this area will not be reported.  However, it will be Graded." *See id.*, ¶ 9.

Simbaki has failed to present evidence that raises a genuine issue of material fact in support of its affirmative defense.  Specifically, Simbaki has not presented evidence that it exercised reasonable care to prevent and correct sexual harassment at the Montrose location, or that Intervenors unreasonably failed to take advantage of any preventive or corrective opportunities available to them.  As a result, the EEOC is entitled to summary judgment on Simbaki's affirmative defense.

## C.    **Retaliation Against Intervenor Baatz**

A plaintiff establishes a *prima facie* case of retaliation by showing that (1) she engaged in a protected activity under Title VII, (2) that she suffered an adverse employment action, and (3) that there was a causal link between the protected activity and the adverse employment action. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 657 (5th Cir. 2012) (citing *Taylor v. United Parcel Serv., Inc.,* 554 F.3d 510, 523 (5th Cir. 2008)).  It is undisputed that Intervenor Baatz engaged in protected activity when she filed a charge of discrimination with the EEOC in March 2008.  It is further undisputed that an offer of re-employment at Simbaki's Baybrook Mall location was revoked.[6]

The EEOC has presented evidence that the revocation of the offer for Baatz to return to work at Simbaki occurred shortly after Wattel learned of Baatz's EEOC charge.  The EEOC has presented evidence that Wattel told Baatz she would need to withdraw her EEOC charge if she wanted the job.  Simbaki has presented evidence, however, that Wattel denies making that statement to Baatz and, instead, told her only that she would need to tell the truth to the EEOC.  *See* Wattel Depo., pp. 162, 183. Wattel testified also that Baatz told him she was planning to write a letter retracting her allegations.  *See id.* at 184.  Simbaki's evidence, viewed in the light most

---

[6]    The withdrawal of the offer of re-employment is the only retaliatory action as to which the EEOC seeks summary judgment.

favorable to the non-movant, is sufficient to raise a genuine issue of material fact regarding the causal connection between Baatz's EEOC charge and the withdrawal of her offer of re-employment.  The EEOC's Motion for Summary Judgment on this issue is denied.

## VI.  SIMBAKI'S MOTION FOR SUMMARY JUDGMENT

Simbaki seeks summary judgment on Intervenors' retaliation claims, and on Kulig's claims that are based on conduct prior to her rehire date in July 2006. Simbaki also seeks summary judgment on the single employer or joint enterprise issue, but the Court has dismissed all claims against BHT and, therefore, that issue is moot.

### A.    Retaliation Claims

As noted above, a plaintiff establishes a *prima facie* case of retaliation by showing that (1) she engaged in a protected activity under Title VII, (2) that she suffered an adverse employment action, and (3) that there was a causal link between the protected activity and the adverse employment action.  *Hernandez*, 670 F.3d at 657 (citing *Taylor,* 554 F.3d at 523).  It is undisputed that Kulig engaged in protected activity when she complained of sexual harassment, including by written complaint in January 2007, and when she filed a charge with the EEOC in November 2007.  It is undisputed that Baatz engaged in protected activity when she made verbal

complaints of sexual harassment to Domingo and to Wattel, and when she filed her charge with the EEOC in March 2008.

**_Baatz_** – Simbaki seeks summary judgment on Baatz's claim that she was subjected to either a retaliatory discharge or constructive discharge in late February 2008, after she made sexual harassment complaints at the meeting on January 24, 2007.[7]  The undisputed evidence establishes that on the night of February 26, 2008, Baatz was working as a bartender at the Montrose location.  It is undisputed that she left the building, that there were no other employees in the public section of the restaurant/bar, and that there was at least one customer in the restaurant at the time. It is undisputed that Baatz did not advise any employees working in the back part of the restaurant that she was leaving.  While Baatz was away from the building, Wattel telephoned the restaurant and the customer answered the telephone.  Wattel called Hagen, one of the managers, to go to the restaurant.  Hagen arrived just as Baatz was returning.  It is disputed whether Hagen fired Baatz at that time or whether Hagen "relieved Baatz" for the shift and Baatz resigned the next day.

Baatz has presented evidence that she left the building to go to a nearby pharmacy to fill a prescription, and that the customer left alone in the restaurant was a good friend of hers.

---

[7] Simbaki does not seek summary judgment on Baatz's retaliation claim involving the retraction of her offer for re-employment.

The evidence in the record raises a genuine issue of material fact regarding whether there is a causal connection between Baatz's complaints of sexual harassment and any decision to terminate her employment. Baatz's evidence raises a reasonable inference that, had she not complained of sexual harassment, her decision to leave the bar to go to the pharmacy would not have resulted in the termination of her employment. As a result, Simbaki is not entitled to summary judgment on Baatz's retaliation claim involving the incident in February 2008.

*__Kulig - Thursday-Night Shifts.__* – Kulig alleges that after her January 2007 complaints of sexual harassment, she was no longer allowed to work a Thursday-night shift. It is undisputed that when Kulig returned to work at the Montrose location in 2006, she was primarily interested in working the Sunday brunch shift, the most lucrative shift at the restaurant. She was given that assignment. In addition, Kulig would occasionally work one or two other shifts during the week. It is undisputed that Kulig worked the Thursday-night shift on January 25, 2007, the day after her written complaint of sexual harassment. Kulig perceived that the Thursday-night shift was favorable financially because of the large amount of tips received during the shift.

Simbaki argues that Kulig did not suffer an adverse employment action. Whether refusing to assign Kulig the Thursday-night shift constitutes an adverse employment action for purposes of a Title VII retaliation claim is analyzed in the light

of the Supreme Court's decision in *Burlington Northern & Santa Fe Ry. Co. v. White,* 548 U.S. 53 (2006).  To establish an adverse employment action, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68.  "[T]he significance of any given act of retaliation will often depend upon the particular circumstances. Context matters." *Id.* at 69.  In *Burlington*, the Supreme Court noted that retaliatory work assignments, particularly those resulting in reduced income, are a "classic and widely recognized example of forbidden retaliation." *Id.* at 71 (internal quotations omitted).  The evidence in this record raises a genuine issue of material fact whether the refusal to assign Kulig to favorable Thursday-night shifts was an adverse employment action.

Simbaki has presented evidence that Kulig was not assigned the Thursday-night shifts because it was Hagen's regular shift.  Kulig has identified evidence in the record, however, that shortly after Kulig gave Wattel the written complaint, he told Domingo that he "wanted Kim Kulig to lose her Thursday evening shift." *See* Domingo Aff., ¶ 8.  Kulig has presented evidence that raises a genuine issue of material fact concerning Wattel's motives regarding the Thursday-night shift assignments.  Simbaki's Motion on Kulig's retaliation claim on this issue is denied.

***Kulig - Constructive Discharge.*** – Kulig alleges also that she was constructively discharged in retaliation for filing a Charge of Discrimination with the EEOC. *See* Intervenors' Complaint [Doc. # 6], ¶ 41. Simbaki argues that Kulig was not constructively discharge but, instead, resigned to take a job in Boston.

It is undisputed that Kulig worked at the Montrose location while she was a student at the University of Houston. Both before and after her graduation in May 2006, Kulig was looking for a job closer to her family in Massachusetts. After graduating with a business degree, Kulig began working for an endowment firm in Houston and, in July 2006, returned to work at the Simbaki restaurant on Montrose. Shortly after Thanksgiving in 2007, Kulig learned of a job opening with Spectra Energy in Boston. Thereafter, Kulig participated in a telephone interview and accepted an offer from Spectra. Kulig went to Massachusetts and bought a house, then left Houston on December 26, 2007. She resigned from her job with Simbaki "in December 2007."

Neither the EEOC nor Intervenors have identified any evidence that disputes Simbaki's evidence that Kulig left her employment to pursue a job opportunity in Boston, nearer to her family. Indeed, in their respective Responses to Simbaki's Motion for Summary Judgment, neither the EEOC nor Intervenors addressed this aspect of Simbaki's Motion. As a result, absent evidence or argument identifying a

fact dispute for trial, Simbaki is entitled to summary judgment on Kulig's retaliation claim based on an alleged constructive discharge in December 2007.

**B.    Kulig's Claims Based on Conduct Prior to July 2006**

Kulig alleges that she was subjected to sexual harassment by Wattel when she worked for Simbaki between August 2003 and October 2005.[8]  Kulig's Charge of Discrimination was filed with the EEOC on November 9, 2007.   Simbaki seeks summary judgment on Kulig's claims based on conduct prior to her returning to work for Simbaki in July 2006.

"A Title VII plaintiff in Texas must file a charge of discrimination with the EEOC within 300 days after learning of the unlawful employment practice that is alleged." *Allen v. Cnty. of Galveston, Texas*, 352 F. App'x 937, 939 (5th Cir. Nov. 5, 2009) (citing *Huckabay v. Moore,* 142 F.3d 233, 238 (5th Cir. 1998); 42 U.S.C. § 2000e-5(e)(1)).   As a result, under this general rule, Kulig's claims arising before January 13, 2007, would be time-barred.

The EEOC and Intervenors argue that the claims prior to that date are permissible under the "continuing violation" doctrine, under which a plaintiff asserting a hostile work environment may pursue otherwise untimely claims if the "claim is comprised of a series of separate acts that collectively constitute on unlawful

---

[8]    Kulig asserts that she was fired in October 2005 after she asked Wattel to stop taking money from the employees' tip jar.

employment practice." *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 328 (5th Cir. 2009).  The doctrine in the Fifth Circuit is limited in three ways.  "First, the plaintiff must demonstrate that the separate acts are related."  *Id.* (internal quotations omitted). "Second, the violation must be continuing; intervening action by the employer, among other things, will sever the acts that preceded it from those subsequent to it, precluding liability for preceding acts outside the filing window."  *Id.*  "Third, the continuing violation doctrine is tempered by the court's equitable powers, which must be exercised to honor Title VII's remedial purpose without negating the particular purpose of the filing requirement."  *Id.* (internal quotations omitted).

In this case, Kulig seeks to pursue claims based on conduct occurring while she was employed by Simbaki between August 2003 and October 2005.  Kulig did not work for Simbaki between October 2005 and July 2006.  She returned to work for Simbaki in July 2006, and this second period of employment continued until she resigned in December 2007.  The two periods of alleged sexual harassment – August 2003 until October 2005, and July 2006 until December 2007 – are "severed by the intervening acts" of Simbaki.  *See id.* at 329; *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 118 (2002) (intervening action by the employer may establish that the first period of harassment is no longer part of the same hostile environment claim).  The periods of alleged harassment in *Stewart* were severed by the plaintiff's

transfer to a different supervisor as a remedial act.  *See Stewart*, 586 F.3d at 329.

Although the severance of the two periods of harassment in this case was not taken

to remedy allegations of harassment, the severance in this case is much more

definitive because Kulig no longer worked for Simbaki – she was not simply

transferred to a different supervisor.  There was significantly more involved in this

case than a "gap" between specific instances of harassment; there was a totally

severed employment relationship.  This Court holds that such severed employment

precludes application of the continuing violation doctrine to allow otherwise untimely

claims based on conduct occurring during the first period of employment.

A significant factor in this decision is that Kulig did not file a Charge of

Discrimination with the EEOC during the period of time between the end of her first

period of employment in October 2005 and the beginning of her second period of

employment in July 2006.  The third factor in the continuing violation analysis is

whether its application serves Title VII's remedial purpose "without negating the

particular purpose of the filing requirement."  *Stewart*, 586 F.3d at 328.  Allowing an

employee to sever her employment with a harasser for any number of years, then

knowingly return to the employment of the harasser and sue for harassment during the

initial period of employment, no matter how remote in time, would completely negate

the filing requirement under Title VII.

Kulig's claims involving alleged conduct during her first period of employment with Simbaki are severed from her claims involving harassment during her second period of employment with Simbaki by the period between October 2005 and July 2006 when she was not working for or subjected to the behavior of the alleged harasser.  As a result, the violations are not "continuing."  Additionally, allowing otherwise untimely claims from a prior period of employment would completely negate the purpose of the filing requirement.  As a result, Simbaki is entitled to summary judgment on Kulig's claims based on conduct prior to July 2006.[9]

## VII.  <u>CONCLUSION AND ORDER</u>

Based on the foregoing, it is hereby

**ORDERED** that Wattel's Motion for Summary Judgment [Doc. # 95] is **GRANTED** as to Baatz's defamation claims based on Wattel's statement to the *Houston Chronicle* that "she was offered a non-supervisory position but opted not to take it" and **DENIED** in all other respects.  It is further

---

[9]     The Court notes, however, that Kulig's inability to pursue a claim for relief based on conduct prior to July 2006 does not preclude the admissibility of evidence regarding pre-July 2006 conduct, subject to the Federal Rules of Evidence, as background support for or proof of intent and pattern regarding the post-July 2006 claims. *See, e.g., Abner v. Kansas City Southern R.R. Co.*, 513 F.3d 154, 167-68 (5th Cir. 2008); *EEOC v. Rock-Tenn Servs. Co., Inc.*, __ F. Supp. 2d __, 2012 WL 4747186, *11 (N.D. Tex. Aug. 22, 2012).

**ORDERED** that BHT's Motion for Summary Judgment [Doc. # 96] is **GRANTED** and all claims against BHT are **DISMISSED**.  It is further

**ORDERED** that the EEOC's Motion for Summary Judgment [Doc. # 97] is **GRANTED** as to Simbaki's affirmative defense; **GRANTED** as to the existence of a hostile work environment that was severe or pervasive; and **DENIED** as to Intervenor Baatz's retaliation claim.  It is further

**ORDERED** that Simbaki's Motion for Summary Judgment [Doc. # 12] is **DENIED AS MOOT** as to whether Simbaki and BHT are a single employer or joint enterprise; **GRANTED** as to Kulig's retaliation claim based on her resignation in December 2007, and **DENIED** as to all other retaliation claims; and **GRANTED** as to Kulig's claims based on conduct occurring prior to her return to work for Simbaki in July 2006.

This case remains scheduled for docket call on **July 8, 2013**, unless settled prior to that date.  The parties are reminded that they are required to mediate this dispute in good faith prior to docket call.

SIGNED at Houston, Texas, this **29th** day of **May, 2013**.

Nancy F. Atlas
United States District Judge